UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON COURTNEY RILEY,

    Plaintiff,

v.                                                       Case No.: 8:18-cv-103-EAK-JSS

WORKNET PINELLAS, INC.,

    Defendant.

## ORDER

Before the Court is Defendant Worknet Pinellas, Inc.'s ("Worknet") Motion to Dismiss Plaintiff's complaint ("Motion") (Doc. 13). For the reasons set forth below, Worknet's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

Plaintiff, proceeding *pro se*, initiated this action by filing his Complaint for Employment Discrimination ("Complaint") (Doc. 1) on January 16, 2018.[1] In doing so, Plaintiff utilized the form complaint for employment discrimination that is provided to *pro se* litigants by the Administrative Office of the United States Courts through its online website.[2] Plaintiff brings his Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117 ("ADA"), and the Uniformed Services Employment and

---

[1] Plaintiff asserts that he received his right to sue letter on January 12, 2018, but attached no documentation to corroborate that assertion. See Complaint at § IV(B)). Nevertheless, the right to sue letter was mailed to Plaintiff on November 14, 2017. See (Doc. 1-1 at 6). Therefore, the Court is satisfied that Plaintiff timely filed this lawsuit (*i.e.*, within 90 days of his receipt of the right to sue letter).

[2] *See* http://www.uscourts.gov/forms/pro-se-forms/complaint-employment-discrimination.

Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4335 ("USERRA"). *See* Complaint at § II. In the "Statement of Claim" section of his Complaint, Plaintiff indicated that the discriminatory conduct of which he complains includes: (1) termination of his employment; (2) failure to accommodate his disability; (3) unequal terms and conditions of his employment; and (4) retaliation.[3] *Id.* at § III(A). In that same section, Plaintiff further indicated that Worknet discriminated against him based on his combat-related Post Traumatic Stress Disorder ("PTSD"). *Id.* at § III(D). The actual facts on which Plaintiff bases his claims, however, are scantly developed. The entirety of the facts alleged by Plaintiff in his Complaint are as follows:

> The Department of Economic Opportunity determined that I was terminated due to medical reasons. The decision of the appeals referee is attached. . . . Beyond all bounds of decency, [Worknet] constructively discharged my employment due to medical reasons. I suffer from Combat related PTSD that was diagnosed by the Veterans Administration. The adverse actions against me exacerbated my condition of PTSD. The evacuation incident and the proceedings following have caused a high level of pain and suffering. [Worknet] acted with malice or wreckless [sic] indifference to my federally protected rights as an employee.

*Id.* at §§ III(E), V.

That said, Plaintiff appended to his Complaint several documents as exhibits, including (1) a decision of the Appeals Referee of the Department of Economic Opportunity Reemployment Assistance Program, (2) a right to sue letter issued to Plaintiff

---

[3] It appears that Plaintiff also attempts to bring a claim for breach of contract. *See* Complaint at §V. However, Plaintiff included this claim within his prayer for relief, which is improper. Further, Plaintiff's Complaint lacks well-pled allegations regarding (i) Plaintiff's rights under the contract, (ii) what provisions of the contract were breached, and (iii) how the contract was breached. Moreover, Plaintiff has failed to attach the alleged contract to his Complaint as an exhibit, or otherwise incorporate the contract into his Complaint. Accordingly, Plaintiff's claim for breach of contract is due to be dismissed with leave to amend.

Case No.: 8:18-cv-103-EAK-JSS

by the U.S. Equal Employment Opportunity Commission ("EEOC"), and (3) correspondence sent to Plaintiff by the Department of Veterans Affairs summarizing his entitlement to benefits. In addition, Worknet appended as an exhibit to its Motion Plaintiff's Charge of Discrimination sent to the EEOC ("Charge"). See (Doc. 13-1). Upon review of those documents,[4] the Court understands the events giving rise to the litigation to have unfolded thus: Plaintiff was diagnosed with PTSD on July 14, 2017. See (Doc. 1-1 at 1, 7). Plaintiff subsequently began his employment with Career Source Tampa Bay Center, which appears to be an affiliate and/or subsidiary of Worknet, as a Tech IT instructor the following month, on August 7, 2017. Id. at 1; (Doc. 13-1 at 2). On September 6, 2017, in the face of the State of Emergency issued by Governor Scott as a result of the impending landfall of hurricane Irma, Plaintiff began to have flair-ups from his PTSD and felt he should evacuate with his family. See (Doc. 1-1 at 1–2); (Doc. 13-1 at 2). Plaintiff sent an e-mail to Ms. Michelle Schultz, Plaintiff's immediate supervisor and the Program Director at Career Source Tampa Bay Center, to that effect, explaining that he was evacuating and would not be reporting to work. See (Doc. 1-1 at 1); (Doc. 13-1 at 2). Ms. Schultz replied to Plaintiff's e-mail and explained that their offices were not closed,[5] and that Plaintiff was expected to teach the class scheduled for that evening. See (Doc. 1-1 at 2). Plaintiff refused. Id. On September 14, 2017, Plaintiff made a

---

[4] The Court can properly consider these documents in ruling on Worknet's Motion. See Navia v. Nation Star Mortg. LLC, 708 F. App'x 629 (11th Cir. 2018) (unpublished); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (unpublished); Universal Express, Inc. v. U.S. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (unpublished).

[5] Worknet's procedures dictate that in the face of a natural disaster, their office does not close until the county government offices are closed. See (Doc. 1-1 at 1).

request to Ms. Schultz for "reasonable accommodations" to his work schedule to off-set his PTSD symptoms. *Id.*; (Doc. 13-1 at 2). That same day, Ms. Schultz requested that Plaintiff report to the office, whereupon the human resource director, Ms. Cobb, met with Plaintiff. *See* (Doc. 1-1 at 2); (Doc. 13-1 at 2). During that meeting, Plaintiff was informed that he was being terminated due to his failure to report to work on September 6, 2017. *See* (Doc. 1-1 at 2); (Doc. 13-1 at 2).

As a result of Worknet's alleged unlawful conduct, Plaintiff seeks $3,000,000.00 in damages, which includes amounts for for back pay, front pay, and compensatory and punitive damages. *See* Complaint at 6.

Worknet timely filed its Motion on April 16, 2018. Through its Motion, Worknet requests that the Court dismiss Plaintiff's Complaint with prejudice. As grounds, Worknet contends that Plaintiff failed to satisfy the administrative prerequisites with respect to his Title VII and ADA claims. This, Worknet argues, is "fatal" to those two claims. Worknet further contends that, in any event, Plaintiff has not stated—and, indeed, *cannot* state—a facially plausible claim for discrimination based upon his PTSD, his military status, or any other characteristic protected by Title VII, the ADA, or USERRA.

For his part, Plaintiff failed to file a response in opposition to the Motion, and the time for doing so has elapsed. *See* Local Rule 3.01(b). Worknet's Motion is thus ripe for decision.

## II. Legal Standard

Rule 8 requires complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12 allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all factual allegations in the complaint as true, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. *Neitzke v. Williams,* 490 U.S. 319, 326 (1989).

*Pro se* pleadings are generally held to a less stringent standard and are liberally construed. *See Boxer X v. Harris,* 437 F.3d 1107, 1110 (11th Cir. 2006). However, a *pro se* complaint, like any other civil complaint, is still subject to dismissal where it fails to state a facially plausible claim for relief or otherwise fails to comport with Federal Rules of Civil Procedure. *See Fontaine v. JPMorgan Chase Bank, N.A.*, No. 3:15-CV-193-J-34PDB, 2016 WL 111575, at *3 (M.D. Fla. Jan. 11, 2016) (unpublished). Moreover, District courts are not "required to comb through an incomprehensible pleading in order to cobble together a claim on Plaintiff's behalf," *Gold v. Geo Grp. Inc.*, No. 2:16-CV-73-FTM-29MRM, 2016 WL 7034404, at *2 (M.D. Fla. Dec. 2, 2016) (unpublished), and they are *prohibited* from "rewrit[ing] a deficient pleading for a party or otherwise serv[ing] as his de facto counsel," *Fontaine*, 2016 WL 111575, at *3 (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662); *see also Pliler v. Ford*, 542 U.S. 225, 226 (2004) ("[F]ederal district judges have no obligation to act as counsel or paralegal to *pro se* litigants."). Nevertheless, "[i]t

is a well-established rule in the Eleventh Circuit that where a more carefully drafted *pro se* complaint might state a claim, the 'plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice,'" unless the court determines that any amendment would be futile. *Bettencourt v. Owens*, 542 F. App'x 730, 735 (11th Cir. 2013) (unpublished) (quoting *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991)); *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

**III.  Discussion**

**A. Plaintiff's Title VII and USERRA Claims**

The Court will first address Plaintiff's claims under Title VII and USERRA. Administrative prerequisites aside, the Court finds that Plaintiff's discrimination claims under both statues are due to be dismissed with prejudice.  Title VII prohibits discrimination based on an employee's "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). USERRA provides that a current or former member of the Armed Services "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). Without undertaking substantial and unnecessary analysis, it is clear from a review of Plaintiff's Complaint and the appended exhibits, in addition to the Charge appended to Worknet's Motion, that Plaintiff is not alleging that he was discriminated against based on his race, color, religion, sex, national origin, or prior military service.[6] Rather, the gist of Plaintiff's allegations are that he was discriminated

---

[6] Plaintiff received an honorable discharged from the Army on August 6, 2007. *See* (Doc. 1-1 at 7).

Case No.: 8:18-cv-103-EAK-JSS

against based on his apparent disability—combat-related PTSD—and that he was subjected to unlawful retaliation.[7]

### B. Plaintiff's ADA Claims

While Plaintiff's allegations are not cognizable under Title VII or USERRA, they may, however, be cognizable under the ADA. But before addressing the substance of Plaintiff's ADA claims, the Court must first address Worknet's contention that Plaintiff failed to comply with the ADA's administrative prerequisites.

*1. The ADA's Administrative Prerequisites*

The ADA does not have its own procedures for filing suit under the Act but rather expressly adopts the procedures of Title VII at 42 U.S.C. Section 2000e-5. *See* 42 U.S.C. § 12117(a); *see also Butler v. Greif, Inc.*, 325 F. App'x 748, 749 (11th Cir. 2009) (unpublished) ("Before filing suit under the ADA, a plaintiff must exhaust his administrative remedies[.]") (citing 42 U.S.C. § 12117(a)). Section 2000e-5 requires a complainant to file a "charge" with the EEOC, and states that such "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e–5(b). Pertinent EEOC regulations also require that the charge be "verified." *See* 29 C.F.R. § 1601.9. EEOC regulations define the term "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of

---

[7] Notably, Plaintiff's Charge states, "I believe I was discriminated against because of my disability in violation of the American's with Disability [sic] Act, as amended in 2008."

Case No.: 8:18-cv-103-EAK-JSS

perjury[.]'" 29 C.F.R. § 1601.3(a). "The verification requirement is mandatory." *Rizo v. Alabama Dep't of Human Res.*, 228 F. App'x 832, 836 (11th Cir. 2007) (unpublished).

Worknet contends that Plaintiff's Charge is unverified. And upon review, it appears that Worknet is correct, as Plaintiff failed to sign the Charge under penalty of perjury or have it duly notarized. *See* (Doc. 13-1 at 2). The question, then, is what consequences flow from Plaintiff's procedural misstep? Worknet argues that it subjects Plaintiff's ADA discrimination claims to dismissal with prejudice. In the Court's view, such a result would be exceedingly harsh.

EEOC regulations permit, in certain situations, an otherwise timely charge to "be amended to cure technical defects or omissions, *including failure to verify the charge*[.]" 28 C.F.R. § 1601.12(b) (emphasis added). Regrettably, however, an unpublished opinion from the Eleventh Circuit indicates that there is a discrete window of opportunity within which a plaintiff can amend his EEOC charge: "while the charge [is] pending before the EEOC." *Butler*, 325 F. App'x at 749. In other words, once "a right to sue letter has issued, the plaintiff has brought suit, and the EEOC has closed its file, there is no longer a charge pending before the EEOC." *Id.* (citing *Balazs v. Liebenthal,* 32 F.3d 151, 156–58 (4th Cir. 1994) (permitting the plaintiff's EEOC charge to be amended and amendment verification to relate back only so long as the charge is a viable one in the EEOC's files). It thus follows, at least in the *Butler* panel's view, that if there is no pending charge, then there is nothing to amend. *Id.* That being the case, there is no way around a finding that Plaintiff has failed to properly satisfy the ADA's administrative prerequisites, for which there is no cure through some sort of after-the-fact verification or amendment.

However, that does not end the Court's analysis. While "section 2000e-5(b)'s verification requirement is a statutorily required element of an EEOC charge, it is not a *jurisdictional* prerequisite for suit," *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 262 (3d Cir. 2006) (emphasis in original), and is "therefore subject to equitable considerations," *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 79 (5th Cir. 1982). *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) (holding that a realted provision, Title VII's mandatory time limit for filing charges with the EEOC, is "not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires); *Butler*, 325 F. App'x at 750 (recognizing that the Third Circuit in *Buck*, 452 F.3d at 265, held that the verification requirement is subject to equitable considerations, but declining to extend equitable relief to non-cooperative plaintiff). Here, based on principles of fundamental fairness, the Court finds that Plaintiff's failure to verify his Charge is subject to equitable modification and accordingly declines the invitation to dismiss Plaintiff's ADA discrimination and retaliation claims based on such a minor, technical defect.

As the Supreme Court has explained, the purpose of Title VII's—and thus by extension the ADA's—verification requirement is to "protect[] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002) (holding that a charge filed with the EEOC within the relevant 300-day limitation period will be considered timely even if not verified until after the limitation period has tolled). In other words, the verification requirement "is meant to provide some degree of insurance against catchpenny claims of disgruntled, but

not necessarily aggrieved, employees." *Id.* at 115. Here, however, it appears that Worknet was never called upon by the EEOC to respond to Plaintiff's Charge. To be sure a "complainant *must* submit a *verified* charge before the [EEOC] will require a response from the employer." *Id.* (emphasis added) (citing Brief for United States et al. as *Amici Curiae* on Pet. for Cert. 16). And indeed, Worknet seems to concede as much, stating in a footnote to its Motion that it "was only able to view the Charge because [it] received a response from the EEOC in response to its [Freedom of Information Act] request at the last moment." *See* (Doc. 13 at 7, n.5). Accordingly, if Worknet was never compelled to respond to the Charge during the EEOC's investigation, then the purpose served by the verification requirement—*i.e.*, sparing employers the aggravation, time, and expense of responding to an unverified, and potentially frivolous, EEOC charge—is not relevant to the Court's determination.[8] Instead, the Court's determination must be guided by the countervailing policy consideration of "the nature of Title VII as 'a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Edelman*, 535 U.S. at 115 (internal quotations and citations omitted). Postured as such, the Court finds that permitting equitable modification of the verification requirement in circumstances such as those presented here "ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently." *Id.*

---

[8] If Worknet did, in fact, respond to Plaintiff's Charge, which was not explicitly made clear one way or the other in its Motion, then Worknet would have waived its ability to raise its verification challenge with the Court as a basis for dismissal. *See Buck*, 452 F.3d at 265 (holding that "where . . . an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense it waives its right to secure dismissal of the federal court proceedings on that basis").

Case No.: 8:18-cv-103-EAK-JSS

Since the initial filing of his Charge with the EEOC, Plaintiff has been litigating his discrimination claims against Worknet without the aid of legal representation. And although there is no disputing Plaintiff's failure to verify his Charge, there appears no indication that he was ever made aware of his error and failed to timely correct it. Moreover, after he filed his unverified Charge, the EEOC nevertheless undertook an investigation into Plaintiff's allegations and subsequently issued him a right to sue letter. The EEOC's right to sue letter explained that Plaintiff "may file a lawsuit against the respondent(s) under federal law *based on this charge* in federal or state court . . . within 90 days or [his] right to sue will be lost." *See* (Doc. 1-1 at 6) (emphasis added). As a result, Plaintiff, a *pro se* litigant, likely was under the imminently reasonable impression that he had correctly followed all necessary administrative prerequisites for filing a discrimination claim in federal court. Under such circumstances, Worknet's motion to dismiss on the basis of Plaintiff's failure to verify his Charge "can prevail 'only from technical compulsion irrespective of considerations of practical justice.'" *Buck*, 452 F.3d at 265 (quoting *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 36 (1952). The Court cannot—and will not—permit such a result, here.[9]

---

[9] The Court notes that to the extent that Worknet remains concerned that Plaintiff's claims abound in frivolity, the Court finds it sufficient that Plaintiff signed his federal Complaint prior to filing it with the Court. By doing so, Plaintiff has certified that: "(1) [his Complaint] is not being presented for an improper purpose . . . (2) [his Complaint] is supported by existing law or by an nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) [his Complaint] otherwise complies with the requirements of Rule 11." *See* Complaint at § VI.

Case No.:  8:18-cv-103-EAK-JSS

### 2. *Plaintiff's Substantive ADA Claims*

Having found that Plaintiff's ADA claims are not procedurally barred, the Court must now determine the substantive sufficiency of those claims.  Ostensibly, Plaintiff alleges three bases for ADA liability: (1) that he was refused continued employment as a result of his having PSTD (also known as a "disparate treatment" theory of liability); (2) that Worknet failed to provide reasonable accommodations that would have allowed him to effectively perform his job functions notwithstanding his disability; and (3) that he was subjected to unlawful retaliation.

The ADA protects employees by prohibiting employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).  Discrimination under the ADA includes the employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee." 42 U.S.C § 12112(b)(5)(A).  The ADA further prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA.  42 U.S.C. § 12203(a).

Under controlling Eleventh Circuit precedent, the *McDonnell Douglas* burden-shifting analysis of Title VII employment discrimination claims applies to ADA claims.  See *Andrews v. City of Hartford*, 700 F. App'x 924, 925 (11th Cir. 2017); *Jones v. STOA Int'l/Fla., Inc.*, 422 F. App'x 851, 852 (11th Cir. 2011) (unpublished) (citing *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007)).  "In the first step of the burden-shifting analysis, the plaintiff must establish a prima facie case." *Jones*, 422 F. App'x at

852. Notably, however, at the motion to dismiss stage, "because *McDonell Douglas* is an evidentiary standard, not a pleading standard," a complaint alleging discrimination in employment "need not contain specific facts establishing a prima facie case." *Andrews*, 700 F. App'x at 925–26 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)). "Rather, the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512). In other words, the complaint "must allege sufficient facts to allow the court to draw the reasonable inference that the employer engaged in discrimination." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court will address in turn each of Plaintiff's alleged bases for ADA liability.

To state a claim for disparate treatment under the ADA, a plaintiff must allege facts, accepted as true, that would permit the Court to draw the reasonable inference that: (1) he is disabled as defined under the ADA; (2) he is a qualified individual; (3) he was terminated or denied certain employment benefits, for which he was otherwise eligible, by a covered entity; and (4) such termination or denial of benefits was based upon a disability. *See* 42 U.S.C. § 12112(a); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997).

Here, although the Court was able to piece together the gist of Plaintiff's disability discrimination claims through reference to the exhibits appended to both his Complaint and Worknet's Motion, Plaintiff's Complaint fails to set forth sufficient facts to put Worknet on notice of the *specific* grounds on which his disparate treatment claim rests. At this juncture, the Court takes no issue with Plaintiff's allegation that he has PTSD or that PTSD

Case No.: 8:18-cv-103-EAK-JSS

qualifies as a disability as defined by the ADA.[10] However, Plaintiff does not allege that he is "a qualified individual with a disability." *Holbrook*, 112 F.3d at 1526. "A 'qualified individual with a disability' is an 'individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* (citing 42 U.S.C. § 12111(8)). Plaintiff also fails to sufficiently allege exactly *how* he was subjected to disparate treatment discrimination. Although Plaintiff appears to believe that he was terminated solely as a result of his having PTSD, the only allegation Plaintiff makes in that respect is that "[Worknet] constructively discharged [his] employment due to medical reasons." *See* Complaint at § V. Plaintiff's Complaint fails to include sufficient allegations as to the particular circumstances surrounding his termination, which renders the Court unable to reasonably infer that his termination was "because of" his having PTSD, as opposed to his having failed to report to work on September 6, 2017. 42 U.S.C.A. § 2000e-2(a)(1); *see also McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996) (holding that the ADA requires a plaintiff alleging discrimination to prove "but-for" causation). As a result, Plaintiff's allegations with respect to his ADA disparate treatment claim need further development. Accordingly, Plaintiff's ADA disparate treatment claim is due to be dismissed without prejudice.

To state a claim for failure to provide reasonable accommodations, a plaintiff must allege facts, accepted as true, that would permit the Court to draw the reasonable inference that: (1) he is disabled as defined under the ADA; (2) he is a qualified individual;

---

[10] A "disability," as defined bt the ADA, is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1).

Case No.: 8:18-cv-103-EAK-JSS

(3) a reasonable accommodation existed and was denied to the plaintiff; and (4) providing that accommodation would not have imposed an undue hardship on the employer. *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016) (unpublished) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

Again, the Court takes no issue with the first element. However, as highlighted above with respect to his disparate treatment claim, Plaintiff does not allege that he is a "qualified individual with a disability." Additionally, although it appears Plaintiff made a request for a reasonable accommodation related to his work schedule, he fails to sufficiently allege (1) what, specifically, his request entailed, (2) that his request for that accommodation was denied, and (3) that providing his requested accommodation would not have imposed an undue hardship on Worknet. Accordingly, Plaintiff's ADA reasonable accommodation claim is due to be dismissed without prejudice.

To state a claim for retaliation, a plaintiff must allege facts, accepted as true, that would permit the Court to draw the reasonable inference that: (1) he engaged in statutorily protected expression; (2) he was subjected to an adverse employment action subsequent to the protected expression; and (3) a causal connection exists between the protected expression and the adverse action. *See Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007) (unpublished) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003)); *Stewart v. Happy Herman's Cheshire Bridge,* 117 F.3d 1278, 1287 (11th Cir. 1997).

While Plaintiff checked the box labeled "Retaliation" in the "Statement of Claim" section of his Complaint, *see* Complaint at § III(A), he has failed to provide any factual

Case No.: 8:18-cv-103-EAK-JSS

allegations whatever to substantiate a retaliation claim against Worknet. Accordingly, Plaintiff's ADA retaliation claim is due to be dismissed without prejudice.

### IV. Conclusion

Plaintiff's discrimination claims are not cognizable under Title VII or USERRA. They may, however, be cognizable under the ADA. Worknet has failed to establish that Plaintiff's ADA claims are procedurally barred, and, given the opportunity to properly amend his allegations, Plaintiff may be able to plead a proper cause of action for disability discrimination and retaliation under the ADA. Through amendment, Plaintiff also may be able to plead a proper cause of action for breach of contract.

Accordingly, it is

**ORDERED** that Defendant Worknet Pinellas, Inc.'s Motion to Dismiss Plaintiff's Complaint (Doc. 13) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's discrimination claims arising under Title VII and USERRA are **DISMISSED WITH PREJUDICE**;

2. Plaintiff's disparate treatment, reasonable accommodation, and retaliation claims arising under the ADA are **DISMISSED WITHOUT PREJUDICE**, with leave to amend;

3. Plaintiff's breach of contract claim is **DISMISSED WITHOUT PREJUDICE**, with leave to amend; and

4. Any amended complaint shall be filed on or before **June 22, 2018**.

If Plaintiff has questions or concerns regarding the Court's instructions, he is encouraged to make use of the resources available to *pro se* litigants in this District.[11]

---

[11] The Tampa Bay Chapter of the Federal Bar Association operates a Legal Information Program on Tuesdays from 1:00 p.m. to 2:30 p.m. at the Sam M. Gibbons United States Courthouse, 801 North Florida Ave, Tampa, FL 33602. Through that program, *pro se*

Case No.:  8:18-cv-103-EAK-JSS

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 1st day of June, 2018.

*[signature]*

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

litigants may consult with a lawyer on a limited basis, free of charge.  More information about the program is available on the Court's website at http://www.flmd.uscourts.gov/legal-information-program.  Additionally, librarians, lawyers, and judges from around the Middle District created a helpful guide to assist *pro se* litigants proceeding in federal court.  That guide can be found by following this link: http://www.flmd.uscourts.gov/sites/flmd/files/documents/mdfl-guide-for-proceeding-without-a-lawyer.pdf.