## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRANDON COURTNEY RILEY,

      Plaintiff,

v.                               Case No.:  8:18-cv-103-EAK-JSS

WORKNET PINELLAS, INC.,

      Defendant.

_____

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendant Worknet Pinellas, Inc.'s ("**Worknet**") Motion to Dismiss ("**Motion**"), (Doc. 28), and Plaintiff Brandon Courtney Riley's response in opposition to the same, (Doc. 30). Worknet's Motion is **GRANTED**.

## I.   <u>Background</u>

Plaintiff, proceeding *pro se*, initiated this action by filing a civil complaint on January 16, 2018. (Doc. 1). Through his complaint, Plaintiff asserted claims for violation of the anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("**Title VII**"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117 ("**ADA**"), and the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–4335 ("**USERRA**"), and a pendent state law claim for breach of Plaintiff's employment contract. Id.

Case No.:  8:18-cv-103-EAK-JSS

Worknet moved to dismiss Plaintiff's complaint on April 16, 2018, contending that Plaintiff failed to satisfy the administrative prerequisites with respect to his Title VII and ADA claims, and that Plaintiff's Title VII, ADA, USERRA, and breach of contract claims were facially implausible. (Doc. 13).  The Court granted the motion in part and denied it in part. (Doc. 23).  Specifically, the Court concluded that:

(1)    Plaintiff's discrimination claims were not cognizable under Title VII or USERRA, but that they may be cognizable under the ADA;

(2)    Plaintiff's ADA claims were not procedurally barred; and

(3)    Given the opportunity to properly amend his allegations, Plaintiff may be able to plead a proper cause of action for disability discrimination and retaliation under the ADA and for breach of contract.

Id.

Plaintiff, still *pro se*,[1] filed his amended complaint on June 26, 2018.  (Doc. 24).  Plaintiff appended to his amended complaint several documents, all of which the Court has thoroughly reviewed:[2]

---

[1]  Plaintiff retained counsel on September 12, 2018 and is currently represented.  (Doc. 31).  However, notwithstanding his appointment over two months ago, Plaintiff's counsel has, to date, filed no pleadings, motions, or other papers on Plaintiff's behalf.

[2]  "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents

2

(1)    Correspondence sent to Plaintiff by the Department of Veterans Affairs summarizing his entitlement to benefits, (Doc. 24-1, at 1–2);

(2)    CareerSource Tampa Bay's ("**CSTB**")[3] offer of employment to Plaintiff, id. at 3;

(3)    Excerpts from Worknet's/CSTB's employee handbook ("**Employee Handbook**") regarding Worknet's/CSTB's discrimination, harassment, confidentiality, whistleblower, and discipline policies, id. at 4–5, 11–15;

(4)    E-mail correspondence sent by the President of CSTB, Mr. Edward Peachey, to several Worknet/CSTB employees, id. at 7;

(5)    E-mail correspondence between Plaintiff and his supervisor, Ms. Michelle Shultz, id. at 6, 8–9;

(6)    Plaintiff's termination letter, id. at 10;

(7)    A decision of the Appeals Referee of the Department of Economic Opportunity Reemployment Assistance Program ("**Appeals Decision**"), id. at 16–17; and

---

of the exhibit itself, the exhibit controls." Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (citation omitted).

[3]  As explained by the Court in its prior Order, CSTB appears to be an affiliate and/or subsidiary of Worknet. (Doc. 23).

(8)    A right to sue letter issued to Plaintiff by the U.S. Equal Employment Opportunity Commission, id. at 18.[4]

Worknet filed its Motion on July 18, 2018.  (Doc. 28).  Through the Motion, Worknet requests the Court dismiss Plaintiff's claims with prejudice "because Plaintiff again fails to state any cause of action, and further attempts to amend . . . will be futile."  Id. at 1.  Plaintiff responded in opposition to the Motion on August 17, 2018.  (Doc. 30).  The Motion is thus ripe for decision.

## II.    Facts

Plaintiff, a former member of the United States Army, was diagnosed with PTSD on June 15, 2017.[5]  (Doc. 24, at "PRELIMINARY STATEMENT"); (Doc. 24-1, at 1).  Approximately two months later, on August 4, 2017, Plaintiff was offered employment with CSTB.  (Doc. 24-1, at 3) ("**Offer Letter**").  The Offer Letter stated, *inter alia,*

> We look forward to having you join CareerSource as an employee and become a member of our team.  However, we recognize that you retain the option, as do we, of ending your employment at any time, with or without notice and with or without cause.  *As such, your employment is at will and neither this letter nor any other oral or written representations may be considered a contract for any specific period of time.*

---

[4]  Additionally, Worknet appended as an exhibit to its prior motion to dismiss Plaintiff's Charge of Discrimination, which the Court has also reviewed.  (Doc. 13-1).

[5]  The Appeals Decision indicates that Plaintiff was diagnosed with PTSD on July 14, 2017.  (Doc. 24-1, at 16).

4

(Doc. 24-1, at 3) (emphasis added).  Plaintiff subsequently began his employment with CSTB as a tech instructor with CSTB's "Tech Hire" program on August 7, 2017.  (Doc. 24, at ¶5); (Doc. 24-1, at 3).

On August 22, 2017, Plaintiff notified Ms. Schultz that he had an appointment with the Veterans Administration for a "PTSD evaluation."  (Doc. 24, at ¶7).

In early September 2017, Hurricane Irma, at that point a Category 5 storm, was making its way through the Caribbean.  See I. Rivera and L. Alvarez, Hurricane Irma, Packing 185-M.P.H. Winds, Makes Landfall in Carribean, The New York Times, https://www.nytimes.com/2017/09/05/us/hurricane-irma-a-category-5-hurri cane-heads-for-puerto-rico.html, (Sept. 5, 2017).  Many projections had Hurricane Irma making landfall in Florida by Sunday, September 10, 2017.  Id.  Accordingly, on September 5, 2017, Mr. Peachey sent an e-mail to CSTB's staff (Plaintiff included) outlining CSTB's emergency procedures.  (Doc. 24-1, at 7).  Mr. Peachey explained that CSTB's offices close "when [the] Hillsborough County Government decides to close down [its] offices[.]"  Id.  "If the [C]ounty does not close [its] offices, [CSTB's] offices . . . remain open."  Id.  Mr. Peachey further explained that he would send out an alert via e-mail if CSTB's offices were closing.  Id.

On September 6, 2017, in light of the State of Emergency issued by Governor Scott due to the impending landfall of Hurricane Irma, Plaintiff began to have "flair-ups" from his PTSD and felt he should evacuate with his family.  (Doc. 24, at ¶¶8–

5

10); (Doc. 24-1, at 16–17); (Doc. 13-1, at 2). That same day, Plaintiff sent an e-mail to Ms. Schultz, in which he explained that he and his family would be "evacuating Florida to stay safe," and asked if Ms. Schultz would like him to cancel classes until the threat of [Hurricane Irma had] passed." (Doc. 24, at ¶10); (Doc. 24-1 at 6). Ms. Schultz replied to Plaintiff's e-mail and explained that "[CSTB's] offices . . . close when [the] Hillsborough County Government . . . close[s] [its] offices[,]" and that Plaintiff was expected to teach class that evening. (Doc. 24-1, at 6, 16). Plaintiff did not report to work on the evening of September 6, 2017, however, and he and his family evacuated Hillsborough County. (Doc. 24, at ¶11); (Doc. 24-1, at 16–17); (Doc. 13-1, at 2). Consequently, Mr. Peachey executed a termination letter, dated and made effective September 6, 2017, terminating Plaintiff's employment with CSTB for violating CSTB's procedures regarding office closures and for failing to report to work on the evening of September 6, 2017. (Doc. 24-1, at 10).

When Plaintiff returned to Hillsborough County on September 14, 2017, he sent an e-mail to Ms. Schultz requesting "reasonable accommodations" to his work schedule in order to "allow [him] to perform [his] job duties." (Doc 24-1, at 8); (Doc. 24, at ¶11–12); (Doc. 13-1, at 2). Specifically, Plaintiff explained that "he was recently diagnosed with [PTSD]," and asked that he be permitted to "telecommute"

Monday through Friday[6] for "lesson planning" and "classroom instruction."  (Doc.

24-1, at 8); (Doc. 24, at ¶13).  Plaintiff further explained that, because of his PTSD,

he has "anxiety," "flashbacks," "hyper arousal," and "trouble controlling his anger,"

and that the purpose of his requested accommodation was to "keep [himself] and the

workplace safe."  (Doc. 24-1, at 8); (Doc. 24, at ¶13).  Ms. Schultz quickly responded

to Plaintiff's e-mail and asked that he report to the office that afternoon.  (Doc. 24-

1, at 9); (Doc. 24, at ¶¶14–15).  Upon arriving, Plaintiff met with Mr. Peachey and

Ms. Alice Cobb, CSTB's human resources director.  (Doc. 24-1, at 17); (Doc. 24, at

¶¶1 –17); (Doc. 13-1 at 2).  During the meeting, Plaintiff was handed his termination

letter and informed that he was being terminated due to his failure to report to work

on September 6, 2017.  (Doc. 24, at ¶18); (Doc. 24-1, at 17).

## III.   **Legal Standard**

Rule 8 of the Federal Rules of Civil Procedure requires complaints to contain

"a short and plain statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12 allows the Court to dismiss a complaint for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

To avoid dismissal, a plaintiff must state a claim that is "plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

---

[6]  Plaintiff's work schedule was as follows:  1:00 p.m. to 9:00 p.m. Monday through Wednesday and 8:00 a.m. to 5:00 p.m. Thursday and Friday.  (Doc. 24-1, at 8).

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court must accept all factual allegations in the complaint as true but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

Pro se pleadings are generally held to a less stringent standard and are liberally construed. Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006). However, a pro se complaint, like any other civil complaint, is still subject to dismissal where it fails to state a facially plausible claim for relief or otherwise fails to comport with Federal Rules of Civil Procedure. Fontaine v. JPMorgan Chase Bank, N.A., No. 3:15-cv-193-MMH-PDB, 2016 WL 111575, at *3 (M.D. Fla. Jan. 11, 2016) (Howard, J.). Moreover, district courts are not "required to comb through an incomprehensible pleading in order to cobble together a claim on Plaintiff's behalf," Gold v. Geo Grp. Inc., No. 2:16-cv-JES-MRM, 2016 WL 7034404, at *2 (M.D. Fla. Dec. 2, 2016) (Steele, J.), and they are prohibited from "rewrit[ing] a deficient pleading for a party or otherwise serv[ing] as his de facto counsel," Fontaine, 2016 WL 111575, at *3 (citing GJR Invs., Inc. v. Cnty. of Escambia, 132

F.3d 1359, 1369 (11th Cir. 1998), <u>overruled on other grounds by Iqbal</u>, 556 U.S. 662)); <u>see also</u> <u>Pliler v. Ford</u>, 542 U.S. 225, 226 (2004) ("[F]ederal district judges have no obligation to act as counsel or paralegal to *pro se* litigants."). Nevertheless, "[i]t is a well-established rule in the Eleventh Circuit that where a more carefully drafted *pro se* complaint might state a claim, the 'plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice,'" unless the court determines that any amendment would be futile. <u>Bettencourt v. Owens</u>, 542 F. App'x 730, 735 (11th Cir. 2013) (unpublished) (quoting <u>Bank v. Pitt</u>, 928 F.2d 1108, 1112 (11th Cir. 1991)); <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007).

## IV.  **Discussion**

As with his prior rendition, Plaintiff's amended complaint ostensibly asserts three bases for ADA liability:

(1)   Plaintiff was discharged from employment as a result of his having PSTD (also known as a "disparate treatment" theory of liability);

(2)   Worknet failed to provide reasonable accommodations that would have allowed Plaintiff to effectively perform his job functions notwithstanding his disability; and

(3)   Plaintiff was subjected to unlawful retaliation.

9

See generally (Doc. 24).  Plaintiff also asserts that Worknet breached Plaintiff's

employment contract.  Id.  The Court will address Plaintiff's ADA and breach of

contract claims, in turn, below.

### A. Plaintiff's ADA Claims

The   ADA   protects   employees   by   prohibiting   employers   from

"discriminat[ing] against a qualified individual with a disability because of the

disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).

Discrimination under the ADA includes the employer's failure to make "reasonable

accommodations to the known physical or mental limitations of an otherwise

qualified employee."  42 U.S.C § 12112(b)(5)(A).  The ADA further prohibits

retaliation against an individual for opposing an unlawful practice or making a

charge under the ADA.  42 U.S.C. § 12203(a).

Under controlling Eleventh Circuit precedent, the McDonnell Douglas

burden-shifting analysis of Title VII employment discrimination claims applies to

ADA claims.  Andrews v. City of Hartford, 700 F. App'x 924, 925 (11th Cir. 2017)

(unpublished); Jones v. STOA Int'l/Fla., Inc., 422 F. App'x 851, 852 (11th Cir.

2011) (unpublished) (citing Holly v. Clairson Indus., *L.L.C.,* 492 F.3d 1247, 1255

(11th Cir. 2007)).  "In the first step of the burden-shifting analysis, the plaintiff must

establish a *prima facie* case." <u>Jones</u>, 422 F. App'x at 852.  Notably, however, at the motion to dismiss stage, "because <u>McDonell Douglas</u> is an evidentiary standard, not a pleading standard," a complaint alleging discrimination in employment "need not contain specific facts establishing a *prima facie* case." <u>Andrews</u>, 700 F. App'x at 925–26 (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510–11 (2002)). "Rather, the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Id.</u> (quoting <u>Swierkiewicz</u>, 534 U.S. at 512).  In other words, the complaint "must allege sufficient facts to allow the court to draw the reasonable inference that the employer engaged in discrimination." <u>Id.</u> (citing <u>Ashcroft</u>, 556 U.S. at 678).  The Court will address, in turn, each of Plaintiff's alleged bases for ADA liability.

### 1. Disparate Treatment

To state a claim for disparate treatment under the ADA, a plaintiff must allege facts, accepted as true, that would permit the Court to draw the reasonable inference that:

(1)   He is disabled as defined under the ADA;

(2)   He is a qualified individual;

(3)   He was terminated or denied certain employment benefits, for which he was otherwise eligible, by a covered entity; and

(4)   Such termination or denial of benefits was because of a disability.

42 U.S.C. § 12112(a); <u>Holbrook v. City of Alpharetta, Ga.</u>, 112 F.3d 1522, 1526 (11th Cir. 1997).

As an initial matter, the Court, at this juncture, takes no issue with Plaintiff's allegation that he has PTSD, or that PTSD qualifies as a disability under the ADA.[7] And no party disputes that Worknet/CSTB terminated Plaintiff's employment. However, Plaintiff again fails to allege facts that would permit the Court to draw the reasonable inference that he is "a qualified individual with a disability." <u>Holbrook</u>, 112 F.3d at 1526. "A 'qualified individual with a disability' is an 'individual with a disability who, *with or without reasonable accommodation*, can perform the *essential functions of the employment position* that such individual holds or desires.'" <u>Id.</u> (quoting 42 U.S.C. § 12111(8)) (emphasis added).

> An essential function of a position is a fundamental duty of the 'employment position the individual with a disability holds or desires,' and 'does not include the marginal functions of the position.' Evidence of whether a particular function is essential can include the employer's judgment, the written job descriptions, and the consequences of not requiring the individual to perform the function.  A reasonable accommodation includes '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.'

---

[7]  A "disability," as defined by the ADA, is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1).

Case No.:  8:18-cv-103-EAK-JSS

Barnhart v. Wal-Mart Stores, Inc., 206 F. App'x 890, 892 (11th Cir. 2006) (unpublished) (quoting 29 C.F.R. § 1630.2(n)(1), (o)(1)(ii)). It's clear from a review of Plaintiff's amended complaint and documents appended thereto that the reasonable accommodation Plaintiff sought was the ability to "telecommute," which the Court assumes means the ability to instruct classes using some sort of Internet-based, telecommunication application (e.g., Skype).   Accepting, for sake of argument, that such an accommodation is a "reasonable" one, Plaintiff has failed to allege that this modification to the manner in which Plaintiff's position as a tech instructor is customarily performed (i.e., through in-person, in-classroom instruction) would enable him to perform the essential functions of that position. See Garrison v. City of Tallahassee, 664 F. App'x 823, 826 (11th Cir. 2016) (unpublished) (holding that the plaintiff, a purchasing agent for the City of Tallahassee, failed to identify a reasonable accommodation that would have allowed her to perform the essential functions of her job, of which included "full-time physical attendance," and was therefore not a "qualified individual" under the ADA).

Nonetheless, even assuming that Plaintiff is a "qualified individual with a disability," Plaintiff again fails to allege facts that would permit the Court to draw the reasonable inference that Worknet terminated his employment "because of" his PTSD.  42 U.S.C.A. § 2000e–2(a)(1); see also McNely v. Ocala Star-Banner Corp.,

Case No.:  8:18-cv-103-EAK-JSS

99 F.3d 1068, 1076 (11th Cir. 1996) (holding that the ADA requires a plaintiff alleging discrimination to prove "but-for" causation).  To discriminate against a disabled person "because of" his or her disability, an employer "must have been aware of the disability." Cordoba v. Dillard's, Inc., No. 6:01-cv-1132-PCF-KRS, 2003 WL 21295143, at *8 (M.D. Fla. Feb. 24, 2003) (Fawsett, J.), aff'd, 82 F. App'x 219 (11th Cir. 2003).  In other words, Worknet cannot be liable for an ADA violation stemming from Plaintiff's termination unless Plaintiff can show that Worknet was aware that Plaintiff, in fact, had been diagnosed with PTSD. Id.

Here, Plaintiff alleges that he notified Ms. Schultz on August 22, 2017 of a scheduled PTSD *evaluation* with the Veterans Administration.  (Doc. 24, at ¶7). However, such a representation is insufficient to put Worknet on notice that Plaintiff suffers from a disability. See Scott v. Shoe Show, Inc., 38 F. Supp. 3d 1343, 1361 (N.D. Ga. 2014) (Thrash, Jr., J.) (holding that the plaintiff's statement to her employer that she was "getting ready to be tested for a disability" was insufficient to impart "actual knowledge" on the employer for purposes of ADA liability); see also Morisky v. Broward Cty., 80 F.3d 445, 448 (11th Cir. 1996) ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.").  It wasn't until September 14, 2017 – eight days *after* Mr. Peachey made the decision to terminate Plaintiff's

employment – that Plaintiff affirmatively notified Ms. Schultz[8] that he had previously been diagnosed with PTSD. (Doc. 24, at ¶12); (Doc. 24-1, at 8). Therefore, Worknet could not have discriminated against Plaintiff because of his PTSD; rather, the face of Plaintiff's amended complaint and the documents appended thereto show that Worknet terminated Plaintiff's employment because of his failure to report to work on September 6, 2017, as instructed by Ms. Schultz.

Finally, the Court takes this opportunity to note that it's not entirely clear whether there were other instances of alleged disparate treatment discrimination aside from the termination of Plaintiff's employment. However, Plaintiff's amended complaint also includes an allegation that he "was denied appropriate disciplinary process for his infraction." (Doc. 24, at ¶20). But even liberally construing this as an allegation that Plaintiff "was denied appropriate disciplinary process for his infraction" *because of his PTSD*, the Court finds that, upon review of Worknet's/CSTB's disciplinary policies, such an allegation cannot support a disparate treatment claim. The Employee Handbook lists three classes of infractions. (Doc. 24-1, at 11–14). Class III infractions are "very serious in nature

---

[8] Plaintiff's ADA disparate treatment claim also fails because Plaintiff does not allege that *Mr. Peachey*, the "relevant corporate decisionmaker," had knowledge of Plaintiff's disability. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1175 (11th Cir. 2005) ("[A]n employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability, and . . . [the plaintiff] . . . failed to show that [her immediate supervisor], *the relevant corporate decisionmaker*, was aware of her alleged disability.") (emphasis added).

and generally result in discharge." Id. at 12. "Insubordination or refusal to perform work or accept a work assignment when properly requested by another employee having the authority for such action" is a Class III infraction. Id. at 13. By refusing to report to work as instructed by Ms. Schultz when CTSB's offices were not yet closed, Plaintiff committed a Class III infraction.  The disciplinary procedure for Class III infractions is "termination of employment" upon the first incident. Id. at 15. Therefore, contrary to Plaintiff's allegation, Mr. Peachey's decision to terminate Plaintiff's employment appears to have been in line with Worknet's/CTSB's own disciplinary policies. And, moreover, Plaintiff does not allege that similarly situated comparators (i.e., other insubordinate CSTB employees) who were not disabled were treated more favorably (i.e., not terminated after an initial Class III infraction). See Udoinyion v. Guardian Sec. Mgmt. & Investigative Servs., Inc., No. 1:08-cv-1729-CC-ECS, 2014 WL 12691603, at *8 (N.D. Ga. Aug. 19, 2014) (Scofield, J.), report and recommendation adopted, No. 1:08-cv-1729-CC-ECS, 2014 WL 12709949 (N.D. Ga. Sept. 12, 2014) (Cooper, J.) (granting summary judgement for employer where "[a] review of the record . . . show[ed] that [the employee] . . . failed to identify any former co-worker as a similarly-situated comparator for his disability claim").

Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for disparate treatment discrimination under the ADA, subjecting the claim to

dismissal.  The Court further finds that Plaintiff's pleading deficiencies cannot be cured through amendment, and Plaintiff's disparate treatment discrimination claim is due to be dismissed *with* prejudice.

### 2.  *Failure to Provide Reasonable Accommodations*

To state a claim for failure to provide reasonable accommodations, a plaintiff must allege facts, accepted as true, that would permit the Court to draw the reasonable inference that:

(1)    He is disabled as defined under the ADA;

(2)    He is a qualified individual;

(3)    A reasonable accommodation existed and was denied to the plaintiff; and

(4)    Providing that accommodation would not have imposed an undue hardship on the employer.

Russell v. City of Tampa, 652 F. App'x 765, 767 (11th Cir. 2016) (unpublished) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)).

The Court reiterates that it takes no issue with Plaintiff's allegation that he has PTSD, or that PTSD qualifies as a disability under the ADA.  However, Plaintiff's reasonable accommodation claim suffers from some of the same defects as his disparate treatment claim – namely, that Plaintiff fails to allege facts that would permit the Court to draw the reasonable inference that he is "a qualified individual

with a disability." <u>Holbrook</u>, 112 F.3d at 1526.  Similarly, assuming Plaintiff's requested accommodation (i.e., telecommuting for all lesson planning and classroom instruction) is a reasonable one – which Plaintiff also fails to allege – Plaintiff fails to allege that such an accommodation would not have imposed an undue hardship on Worknet/CSTB.

Additionally, Mr. Peachey had already made the decision (and executed the termination letter) to terminate Plaintiff's employment prior to the point that Plaintiff informed Ms. Schultz of his disability and made his request for reasonable accommodations.  "An employer generally is not required to grant a request for reasonable accommodation after the occurrence of workplace misconduct that warrants . . . termination." <u>Alvarez v. Sch. Bd. of Broward Cty.</u>, 208 F. Supp. 3d 1281, 1286 (S.D. Fla. 2016) (Cohn, J.).  "[T]he law does not require the [employer] to ignore misconduct that has occurred because the [employee] subsequently asserts it was the result of a disability." <u>Id.</u>  (quoting <u>Halpern v. Wake Forest Univ. Health Scis.</u>, 669 F.3d 454, 465 (4th Cir. 2012); <u>see also</u> <u>Schaffhauser v. United Parcel Serv., Inc.</u>, 794 F.3d 899, 906 (8th Cir. 2015) (holding employer that demoted employee for inappropriate comments, where employee notified employer that his medical condition contributed to his misbehavior *only after* he made the comments, was not liable under ADA); <u>Parsons v. Auto Club Group</u>, 565 F. App'x. 446 (6th Cir. 2014) (unpublished) (holding employer was not obligated to entertain

Case No.: 8:18-cv-103-EAK-JSS

accommodation request where employee first informed employer of his disability *only after* five-month investigation had revealed long history of employee's misconduct); Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the first time *only after* it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'") (emphasis added); Davila v. Qwest Corp., 113 F. App'x. 849, 854 (10th Cir. 2004) (unpublished) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."); Siefken v. Vill. of Arlington Heights, 65 F.3d 664, 666 (7th Cir. 1995) ("'A second chance' . . . is not an accommodation, as envisioned in the ADA.").

Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for failure to provide reasonable accommodations under the ADA, subjecting the claim to dismissal. The Court further finds that Plaintiff's pleading deficiencies cannot be cured through amendment, and Plaintiff's claim for failure to provide reasonable accommodations is due to be dismissed *with* prejudice.

### 3. Retaliation

To state a claim for retaliation, a plaintiff must allege facts, accepted as true, that would permit the Court to draw the reasonable inference that:

    (1)    He engaged in statutorily protected expression;

Case No.:  8:18-cv-103-EAK-JSS

(2)    He was subjected to an adverse employment action subsequent to the

protected expression; and

(3)    A causal connection exists between the protected expression and the

adverse action.

Albra v. City of Fort Lauderdale, 232 F. App'x 885, 891 (11th Cir. 2007)

(unpublished) (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 (11th

Cir. 2003)); Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1287 (11th

Cir. 1997).

The Court assumes without deciding that Plaintiff engaged in a statutorily

protected activity when he e-mailed Ms. Schultz and requested reasonable

accommodations.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th

Cir. 1998) (holding that, to satisfy the first element of an ADA retaliation case, "it

would be sufficient for [a plaintiff] to show that he had a good faith, objectively

reasonable belief that he was entitled to [reasonable] accommodations[.]").[9]  And no

party disputes that Plaintiff suffered an adverse employment action.  However, the

face of Plaintiff's amended complaint and the documents appended thereto

demonstrate that Plaintiff cannot substantiate the third element:  causation.  Indeed,

---

[9]  Aside from Plaintiff's request for reasonable accommodations, there are no other allegations in Plaintiff's amended complaint that would support a finding that Plaintiff engaged in some other statutorily protected activity (i.e., participation in an investigation or other proceeding or opposition to an act or practice made unlawful by the ADA).

Mr. Peachey made the decision to terminate Plaintiff's employment *eight* days prior to Ms. Schultz receipt of Plaintiff's e-mail requesting reasonable accommodations. Thus, Mr. Peachy's decision to terminate Plaintiff's employment could not have been influenced *at all* by Plaintiff's request for reasonable accommodations for the simple reason that Plaintiff had yet to make the request.

Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for retaliation under the ADA, subjecting the claim to dismissal. The Court further finds that Plaintiff's pleading deficiencies cannot be cured through amendment, and Plaintiff's claim for retaliation is due to be dismissed *with* prejudice.

## B. Plaintiff's Breach of Contract Claim

"Under Florida law, a breach of contract claim requires the plaintiff to plead formation of a contract, including offer, acceptance, consideration, and essential terms; material breach; and damages." Garcia v. Diaz, No. 17-10841, 2018 WL 5793430, at *3 (11th Cir. Nov. 5, 2018) (unpublished) (citing Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009). Generally, to comply with federal pleading requirements, a plaintiff attempting to bring a breach of contract claim must either provide the Court with a copy of the contract at issue or include in his complaint detailed allegations regarding the parties to the contract, the contract's formation and its terms, and the manner in which the contract was breached. Bailey

Case No.:  8:18-cv-103-EAK-JSS

v. McCalla Raymer LLC, No. 1:12-cv-0352-AT, 2012 WL 12871828, at *1 n.1

(N.D. Ga. Feb. 23, 2012) (Totenberg, J.).

Here, Plaintiff alleges that he was employed by Worknet/CSTB pursuant to

an employment contract.  (Doc. 24).  However, Plaintiff failed to provide the Court

with a copy of any employment contract he may have had with Worknet/CSTB, and

Plaintiff's amended complaint fails to include *detailed* allegations regarding the

same.  Plaintiff's general allegations that an employment contract existed and that

Worknet/CSTB breached its terms by terminating his employment are insufficient.

Furthermore, CSTB's Offer Letter was not a binding employment contract.

The Offer Letter stated that Plaintiff's employment was "at will" and that the Offer

Letter was not "a contract for employment for any specific period of time."  (Doc.

24-1, at 3).  Nonetheless, even assuming the Offer Letter constituted a binding

employment contract, it is well settled under Florida law that employment contracts

are "terminable at the will of either the employer or the employee unless the

[contract] contains a definite term of employment."  Forde v. Royal's, Inc., 537 F.

Supp. 1173, 1175 (S.D. Fla. 1982) (citing Savannah, Fla. & Western Ry. Co. v.

Willett, 43 Fla. 311, 31 So. 246, 247 (Fla. 1901)); see also Wynne v. Ludman Corp.,

79 So. 2d 690, 691 (Fla. 1955); Sher v. Shower Door Co. of Am., Ltd., 197 So. 2d

333, 333–34 (Fla. 3d DCA 1967).  The Offer Letter included no such term.

Therefore, Plaintiff's employment was terminable at will, and Worknet/CSTB did not breach any employment contract when it terminated Plaintiff's employment.

Likewise, the Employee Handbook was not a binding employment contract. "Florida courts are reluctant to declare policy statements to be employment contracts unless there is an *express* reference in the statement to a period of employment and the benefits to accrue therefrom." LaRocca v. Xerox Corp., 587 F. Supp. 1002, 1003 (S.D. Fla. 1984) (citing Muller v. Stromberg Carlson Corp., 427 So.2d 266, 268–70 (Fla. 2d DCA 1983) (emphasis in original).  Worknet's/CSTB's discipline policy, outlined in the Employee Handbook, explicitly states, "Nothing in this policy is intended to be or should be construed as being contractual in nature[,]" (Doc. 24-1, at 11), and, upon review, none of the policies Plaintiff provided contain any express reference to a period of employment.   Therefore, the policies contained in the Employee Handbook cannot serve as the basis for Plaintiff's breach of contract claim.

Accordingly, the Court finds that Plaintiff has failed to state a plausible claim for breach of contract, subjecting the claim to dismissal.  The Court further finds that Plaintiff's pleading deficiencies cannot be cured through amendment, and Plaintiff's breach of contract claim is due to be dismissed *with* prejudice.

Case No.:  8:18-cv-103-EAK-JSS

## V.    Conclusion

Accordingly, it is

**ORDERED** and **ADJUDGED** that Defendant Worknet Pinellas, Inc.'s

Motion to Dismiss (Doc. 28) is **GRANTED**.  Plaintiff's amended complaint (Doc.

24) is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which

relief may be granted.  The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this _7th_ day of

December, 2018.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel/Parties of Record

24